OPINION
{¶ 1} Defendant-appellant Stanley Lee Pearson aka Stanley Pierson appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of felonious assault, one count of assault and one count of resisting arrest. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On January 31, 2003, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), one count of aggravated robbery, in violation of 2903.13(A)(1), one count of assault, in violation of R.C. 2903.13(A)(1) and one count of resisting arrest, in violation of R.C. 2921.22(B). A trial was conducted March 10, 2003, through March 12, 2003. At trial, the State presented witnesses who testified to the following events.
 {¶ 3} On January 1, 2003, appellant was at a party in the home of Patricia Williams. Canton City Police officers received a patrol call at about 1:25 A.M. concerning an unwanted male at the residence. Officers Smith and Harless were dispatched.
 {¶ 4} Upon arrival, the officers were met by the Patricia Williams and a male. Williams told the officers that she had tried to have a party, it got out of control, and the people there needed to go. The male directed the officers into the house, pointing to the back of the apartment, stating "he's back there."
 {¶ 5} Upon entering the apartment through the front door, the officers observed eight to ten people. The officers' intention was to gather the party goers into one room. However, the officers observed appellant walking toward a bathroom door. Appellant was carrying a beer can and being very loud and profane. Officer Smith followed appellant down the hallway and asked him to come out to where the other party goers were gathering. Appellant replied "F you, you have no warrant. I'm not going anywhere, you can't be here." Tr. Vol. 2, pg. 187. Officer Smith told appellant to relax and keep quiet or else he would end up going to jail. Id. at 187.
 {¶ 6} At that point, Patricia Williams came up to the officers and said "you guys have got to go." Officer Smith became confused because he had believed it was Williams who had made the call to the police for help. Officer Smith followed Williams into a bedroom. Upon talking to Williams further, Williams told Officer Smith that she wanted the officers there and that she wanted "them out of here", stating that "they all need to go." Williams then walked out of the bedroom and stated "you've all got to go, and you've got to go, everybody has to go." Id. at 189-190.
 {¶ 7} Appellant then pointed his finger at Officer Smith, said "I'm going to fuck you up" and stepped toward Officer Smith. Tr. Vol. 2, pg. 209. Officer Harless saw appellant clench his fist and pull his arm back. Officer Harless pulled out his pepper spray and sprayed appellant in the face. According to the officers, the spray did not seem to affect appellant. Officer Harless sprayed appellant again. Appellant eluded the officers and moved from the hallway he was in to the back left bedroom. Appellant entered the bedroom and closed the door. Fearing that appellant was attempting to escape or obtain a weapon, the officers followed appellant to the back bedroom.
 {¶ 8} By this time, the other party goers were becoming angry, yelling and cursing at the two officers. Therefore, Officer Harless used the radio on his shoulder to call a "1025." A "1025" call is used to summon all available officers and signals that an officer needs help.
 {¶ 9} Officer Harless then kicked open the bedroom door and saw appellant attempting to open the window. Appellant was pepper sprayed again. It still had no effect. Appellant then looked right at the officers and ran at the officers slamming them into the wall and door on the other side of the room. Appellant swung his arm at Officer Smith and knocked the microphone off of his shoulder. Appellant then came toward Officer Harless. Officer Harless grabbed his flashlight to stop appellant. However, appellant came at Officer Harless with such force that the flashlight flew out of Officer Harless' hand and went through the bedroom window. Officer Harless hit the door or the wall and felt the rear of his ribs begin to hurt as appellant continued to push him against the wall. Officer Harless applied his hands to appellant's throat to stop him. Officer Harless then attempted to put his hand on his weapon and felt his gun belt turn and appellant's hand on his weapon. Officer Harless then fell to the floor on his right leg to protect his weapon and yelled "he's trying to get my gun."
 {¶ 10} Appellant then turned for the livingroom area and the officers followed appellant to arrest him. Officer Harless pushed appellant backwards to place him down on the floor and both Harless and appellant ended up on the floor facing each other. After more struggling, Officer Harless attempted to get to his knees and felt appellant biting his finger. Appellant released Officer Harless' finger.
 {¶ 11} Eventually, after four marked cruisers arrived in response to the 1025 call, appellant was dragged kicking down the front steps to the front lawn. Flex cuffs were applied and netting was placed over appellant's face.
 {¶ 12} Both appellant and Officer Harless were taken by ambulance to the hospital that evening. Officer Harless suffered a cracked rib, lacerations to his left index finger and bruising around his ribs and body. As a result of his injuries, Officer Harless missed five weeks of work. Officer Smith suffered abrasions and contusions. Appellant required plastic surgery and the permanent insertion of plastic in the cheek region of his face.
 {¶ 13} At trial, appellant's witnesses told an entirely different story. The defense witnesses testified that no one called the police that night and that appellant did not cause any problems with the other party goers that night. The defense claimed that the two officers just showed up and sprayed appellant with pepper spray for no reason. The two officers then allegedly took appellant into a back bedroom and began beating him. According to defense witnesses, when appellant escaped from the bedroom, the two officers followed appellant, jumped on him and continued beating him. The defense witnesses further testified that when the additional officers arrived, all of the additional officers jumped on appellant and began beating and kicking appellant with fists, feet and flashlights.
 {¶ 14} However, appellant's son, who was present during the incident, testified that prior to the arrival of the police officers, appellant had an altercation with his daughter in which appellant "snatched her off of the couch" and took her to another area of the house. Appellant's son also testified that he heard the two officers warn appellant that he would be arrested if he did not quiet down and heard his father, appellant, threaten to "F up" the officers. Tr. Vol. 3, pgs. 583-584.
 {¶ 15} After consideration, the jury returned a verdict of guilty on one count of felonious assault, one count of assault, and one count of resisting arrest. The jury deadlocked on the charge of aggravated robbery and the trial court declared a mistrial. At sentencing, the State moved to dismiss the aggravated robbery charge. The trial court granted the State's Motion.
 {¶ 16} Appellant returned to the trial court for sentencing on March 17, 2003. Appellant was sentenced to a term of seven years of imprisonment on the conviction for felonious assault and one year of imprisonment on the conviction for assault. The trial court ordered that the sentences be served consecutively. The trial court sentenced appellant to a six month term of imprisonment on the misdemeanor count of resisting arrest, to run concurrently with the other sentences.
 {¶ 17} It is from these convictions and sentences that appellant appeals, raising the following assignments of error:
 {¶ 18} "I. The evidence at trial was insufficient to support a conviction, and the jury's verdict was against the manifest weight of the evidence.
 {¶ 19} "II. Other errors were committed at trial not raised herein but apparent on the record.
 {¶ 20} "III. The cumulative effect of errors during the trial resulted in appellant being denied a fair trial."
 I {¶ 21} Appellant, in his first assignment of error, argues that his convictions for felonious assault and assault are against the sufficiency and manifest weight of the evidence. Essentially, appellant argues that because he was acting in self-defense against the officers, the State failed to prove that appellant knowingly harmed Officers Smith and Harless. We disagree.
 {¶ 22} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175, 485 N.E.2d 717.
 {¶ 23} Appellant challenges his convictions for felonious assault against Officer Harless and assault against Officer Smith. To convict appellant of felonious assault, the jury had to find that appellant knowingly caused serious physical harm to Officer Harless. See. R.C. 2903.11(A)(1). To convict appellant of assault, the jury had to find that appellant knowingly caused or attempted to cause physical harm to Officer Smith.
 {¶ 24} In this case, testimony showed that appellant threatened to "F Up" Officer Smith and then proceeded to step towards the officers, clench his fist and pull his arm back. At that point, Officer Harless sprayed appellant with pepper spray. Ultimately, appellant slammed back both officers into a wall and door, swung his arm at Officer Smith and bit Officer Harless, among other violent actions. As a result of appellant's actions, Officer Harless suffered a cracked rib, lacerations to his left index finger and bruising around his ribs and body. Officer Smith suffered abrasions and contusions.
 {¶ 25} Although appellant asserts that he was acting in self defense, the State presented facts from which a jury could reasonably conclude that it was the officers that were assaulted and acted to both defend themselves and arrest appellant. The State presented sufficient evidence upon which a jury could convict appellant of felonious assault and assault. The jury had to decide whether to believe the State's witnesses or the defense's witness. In resolving the conflicts in the evidence, we find that the jury did not lose its way or create a manifest miscarriage of justice. Thus, we find that the jury did not lose its way and create a manifest miscarriage of justice.
 {¶ 26} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 27} In the second assignment of error, appellant asserts that a review of the entire record reveals other errors meriting reversal of appellant's conviction and sentence. In support of this assertion, appellant cites Anders v. California, (1966),386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, without further argument.
 {¶ 28} In Anders, appointed counsel found his indigent client's case to be wholly frivolous and without merit. The United States Supreme Court held it was error for counsel to advise the appellate court by letter without filing any motion or brief on behalf of his client. The case sub judice is distinguishable from Anders in that appellant's appellate counsel filed a brief and in fact assigned errors for review. Accordingly, an Anders claim under this assignment of error has no merit.
 {¶ 29} Appellant's second assignment of error is overruled.
 III {¶ 30} In the third assignment of error, appellant argues that the cumulative effect of the errors set forth in appellant's assignments of error cumulatively denied appellant a fair trial. However, this court has found no error. Accordingly, we find no cumulative error. See State v. Garner (1995), 74 Ohio St.3d 49,64, 656 N.E.2d 623.
 {¶ 31} Accordingly, appellant's third assignment of error is overruled.
 {¶ 32} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J. and Boggins, J. concur.